**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2958-WJM

HUDSON LUIS COSTA,

      Petitioner,

v.

TODD BLANCHE, in his official capacity
as Acting U.S. Attorney General, *et al*.

      Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Hudson Luis Costa's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Respondents Todd Blanche, in his official capacity as Acting United States Attorney General; Daren K. Margolin, in his official capacity as Director of the Executive Office for Immigration Review ("EOIR"); Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); David J. Venturella,[1] in his official capacity as Acting Director of United States Immigration and Customs Enforcement ("ICE"); Kelei Walker, in her official capacity as Acting Director of ICE's Denver Field Office; and Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF") (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 7.) The Court did not order a reply.

---

[1] The Petition originally named Todd M. Lyons, for whom the Government substituted Venturella pursuant to Fed. R. Civ. P. 25(d).

For the following reasons, the Petition is granted.

## I.    BACKGROUND

This case presents an all-too-familiar fact pattern.  Costa is a native and citizen of Brazil.  (ECF No. 1 at ¶ 2.)  He first entered the United States in 2002 but was ordered removed in 2008.  (*Id.* at ¶ 7; ECF No. 1-15 at 6.)  Costa departed the United States in 2009 and remained outside the country for more than 10 years.  (ECF No. 1 at ¶¶ 7, 27.)  He returned in August 2019 and filed an affirmative application for asylum soon thereafter, claiming a reasonable fear of persecution based on his involvement in exposing the "corruption and criminal misconduct" of the "powerful political figures and individuals connected to organized criminal activity" in his community in Brazil.  (*Id.* at ¶¶ 7, 26.)

Since his re-entry in 2019, Costa has resided continuously in the United States with his wife and two daughters.  (*Id.* at ¶ 4.)  For much of that time, he has worked lawfully as a subcontractor in the construction industry pursuant to a Government-issued Employment Authorization Document.  (*Id.* at ¶¶ 4, 7.)

Nevertheless, in May 2026, five ICE agents followed Costa from his residence in Tampa, Florida to a nearby gas station.  (*Id.* at ¶ 3.)  There, they abruptly detained Costa as he was re-fueling his truck en route to work.  (*Id.*)  Costa was not engaged in any unlawful activity at the time of his arrest.  (*Id.*)  Indeed, he has no criminal history whatsoever.  (*Id.*)

After he was detained, DHS transported Costa through at least five detention facilities across multiple states before ultimately transferring him to Colorado.  (*Id.* at ¶ 5.)  He claims that, throughout these transfers, officers refused to provide information

2

regarding his destination and implied that he could be imminently removed from the United States despite his pending asylum application.  (*Id.*)

After his transfer to the DCDF, Costa sought a custody redetermination hearing. (*Id.* at ¶ 9.)  The Aurora Immigration Court determined it lacked jurisdiction to hear his bond request and thus denied it.  (*Id.; see also* ECF No. 1-9 (June 17, 2026 Order of the Immigration Judge).)

Costa now challenges the legality of his detention in this forum and asks the Court to order his immediate release from custody or, in the alternative, to order DHS to provide a prompt constitutionally adequate custody hearing before a neutral adjudicator at which the Government bears the burden of proving by clear and convincing evidence that continued detention is necessary.  (ECF No. 1 at ¶¶ 10–11.)

## II.     LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

3

### III.    ANALYSIS

Costa claims that his detention violates his Fifth Amendment Due Process rights (Counts I and II), the Immigration and Nationality Act ("INA") (Count III), and his Fourth Amendment rights (Count IV).  (*See generally* ECF No. 1.)  Costa also asserts a fifth claim against Respondents for "Failure to Meaningfully Exercise Statutory Release and Parole Authority" (Count V), which may best be construed as a claim arising under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*  (*Id.* at ¶¶ 130–32.)

As a threshold matter, it remains wholly unclear to the Court upon which statutory authority Respondents are relying to justify Costa's detention.  In the Petition, Costa submits that DHS is improperly "rel[ying] upon a historical removal order issued in 2008 . . . as a basis for mandatory detention without individualized review."  (ECF No. 1 at ¶ 7.)  This suggests to the Court that Respondents are purporting to detain Costa pursuant to 8 U.S.C. § 1231, the INA provision governing the detention of noncitizens subject to a final order of removal.  (*See also* ECF No. 1-16 at 39 (DHS Notice of Intent/Decision to Reinstate Prior Order dated May 27, 2026).)  But, in concluding that she "lack[ed] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission," the Immigration Judge ("IJ") cited 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 1-9 at 2.)

It is troubling, to say the least, that neither Costa nor this Court can even clearly discern the purported legal justification for his detention in the first place.  Considering that Respondents have declined to offer any clarity on the matter,[2] the Court will

---

[2] Respondents state they "are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case."  (ECF No. 7 at 1–2.)

assume that Costa is presently detained under § 1225(b)(2)(A), consistent with the IJ's

bond decision.  With that assumption, the Court need only reach Costa's claims that his

detention violates the INA and his due process rights to resolve the Petition.

## A.    INA Violation

As to Costa's statutory claim, the Tenth Circuit's recent decision in *Santillan*

*Quiroz v. Mullin,* ---- F.4th ----, 2026 WL 1876709, at *1 (10th Cir. June 30, 2026) is

dispositive.  (ECF No. 1 at ¶¶ 124–26.)  There, the Tenth Circuit considered "whether §

1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United

States "[t]wo decades ago" and had "lived here ever since."  *Id.* at *2, *4.  Ultimately, it

held "that noncitizens who entered the United States and were thereafter detained in the

interior of the country are usually[3] subject to § 1226(a) (and thus eligible for bond), not §

1225(b)(2)(A)."  *Id.* at *5.[4]

The material facts here are indistinguishable from those summarized in *Santillan*

*Quiroz.*  Like the § 2241 petitioner in that case, Costa was detained in the interior of the

country in May 2026, after having entered the United States approximately seven years

ago.  Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Costa.

---

[3] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)."  *Id.* at *5 n.6.  But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Costa]."  *Id.*

[4] The Tenth Circuit's reasoning is notably consistent with the numerous other decisions the undersigned has reached in the very recent past.  *Cf. Juarez-Bibiano v. Baltazar,* 2026 WL 1893397, at *2–*3 (D. Colo. July 1, 2026); *Garcia Lozano v. Mullin,* 2026 WL 1091266, at *2–*4 (D. Colo. Apr. 22, 2026); *Pal v. Lyons,* 2026 WL 937962, at *2–*4 (D. Colo. Apr. 7, 2026); *Saini v. Baltazar,* 2026 WL 1091263, at *2–*4 (D. Colo. Apr. 22, 2026); *Temaj Lopez v. Baltasar,* 2026 WL 628199, at *2–*4 (D. Colo. Mar. 6, 2026); *Singh v. Baltasar,* 2026 WL 601950, at *1 (D. Colo. Mar. 4, 2026); *Hernandez v. Baltazar,* 2026 WL 507518, at *4 (D. Colo. Feb. 24, 2026); *Garcia Abanil v. Baltazar,* 817 F. Supp. 3d 1148, 1155–57 (D. Colo. 2026); *Morales Lopez v. Baltazar*, 2026 WL 25161, at *4–5 (D. Colo. Jan. 5, 2026).

**B.     Fifth Amendment Violation**

Costa also claims that Respondents have violated his procedural and substantive due process rights by relying on an inapplicable statute as authority for his detention. (*See* ECF No. 1 at ¶¶ 118–23.)  Though the Tenth Circuit ultimately did "not determine . . . whether the Government's position is unconstitutional" in *Santillan Quiroz,* the Court also finds its discussion of the doctrine of constitutional avoidance persuasive to the disposition of Costa's Fifth Amendment claims in this case.  2026 WL 1876709, at *17.

As further support for its resolution of the statutory interpretation question before it, the Tenth Circuit considered the following:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person ... of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas* [*v. Davis*], 533 U.S. [678,] 690 [(2001)].  Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. *Id*.  If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification." *Id.*  Adopting the Government's interpretation of § 1225(b)(2)(A) would pose grave constitutional problems because there is little justification, let alone a strong one, for detaining every one of the millions of unadmitted noncitizens in our country.

*Id.* at *16.[5]

Here, Costa contends—and the Court agrees—that Respondents have

---

[5] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.  In that regard, our discussion of constitutional avoidance sounds in substantive due process." *Id.* at *16 n.12.  The Court makes the same assumption for the purposes of resolving the Petition.

circumvented their constitutional obligation to justify his detention with a "legitimate governmental purpose." (ECF No. 1 at ¶ 122.) Indeed, Respondents have provided *no* justification for Costa's continued detention aside from their erroneous reliance on the mandatory detention statute.[6] By the same token, Respondents have failed to adhere to the prescribed regulatory and statutory procedures for demonstrating Costa's detention is justified. *See also Garcia Abanil,* 817 F. Supp. 3d at 1158 (concluding failure to provide individualized bond hearing prescribed by § 1226 necessarily violated petitioner's due process rights).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra,* 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of Costa's substantive and procedural due process rights.

## C.    Remedy

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing that Respondents, within seven days of this Court's Order, provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), or else release Petitioner." (ECF No. 7 at 2.) For two reasons, this Court no longer considers a bond hearing to be an adequate remedy to redress the violations discussed herein.

First, at least one other district court in this Circuit has persuasively written that,

---

[6] And, to the extent Respondents believe the 2008 order of removal justifies Costa's detention under § 1231 or any other authority, they have waived that issue. *See McKissick v. Yuen,* 618 F.3d 1177, 1189 (10th Cir. 2010) (holding an intentional failure to develop arguments adequately in the district court results in waiver).

"since Petitioner's detention under § 1225(b)(2)(A) is void *ab initio,* immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the *status quo ante*."  *Sosa,* 2026 WL 1453999, at *3.  The *Sosa* court reasoned: "[H]ad Petitioner's initial detention accorded with due process, he would have been entitled to a bond hearing," but "a bond hearing cannot retrospectively cure a due process violation stemming from detention without the statutorily required exercise of discretion."  *Id.* That is, "[u]nder INA regulations, a bond hearing occurs only *after* [ICE] has made its 'initial [discretionary] decision to detain'—it is not itself an initial custody determination but an act of '*re*-determination.'"  *Id.* (quoting *Tumba v. Francis,* 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025)).  Thus, while immediate release cannot cure Costa's roughly two-month long loss of liberty, it is the "remedy that comes the closest to doing so."  *Sosa,* 2026 WL 1453999, at *3.

Second, this Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore."  *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever").  Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the

Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Costa's immediate release.[7]

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 5) is MADE ABSOLUTE and Costa's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Costa pursuant to Counts I, II, and III of the Petition. It does not reach the merits of Counts IV and V;

3.    **By no later than this Friday, July 17, 2026,** Respondents shall IMMEDIATELY RELEASE Costa on his own recognizance, along with all his personal belongings, and they shall facilitate Costa's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

4.    **No onerous conditions of release shall be unilaterally imposed by Respondents on Costa**, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

5.    Respondents are ENJOINED from re-arresting or re-detaining Costa

---

[7] In *Santillan Quiroz,* the Tenth Circuit contemplated in a footnote that, on remand, the district court should "order the Government to, within seven days of such order, either provide [the petitioner] with a bond hearing or else release him." 2026 WL 1876709, at *17 n.13. In this Court's view, it is somewhat ambiguous whether this language means that the Tenth Circuit views release as contingent on the Government's failure to provide a bond hearing, or a bond hearing and release as equal, alternative remedies. In the absence of clear guidance, this Court will continue to order immediate release in the first instance under appropriate circumstances, unless and until the Tenth Circuit holds otherwise.

unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified pursuant to 8 U.S.C § 1226(a).  At any such bond hearing, Respondents shall bear the burden of proof, and Costa shall be allowed to have counsel present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.    During such periods of time as Costa remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Costa from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.    Should Costa believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **August 12, 2026**.  Respondents shall file a response by no later than **September 2, 2026**, and Costa shall file a reply by no later than **September 16, 2026**; and

8.    Judgment shall enter in Costa's favor and against Respondents on **July 29, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 15th day of July, 2026.

BY THE COURT:

_____

William J. Martinez
Senior United States District Judge